YONG GIL HYON and SOON JA HYON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hyon v. Commissioner
Docket Nos. 17046-82, 34760-84.
United States Tax Court
T.C. Memo 1987-218; 1987 Tax Ct. Memo LEXIS 220; 53 T.C.M. (CCH) 700; T.C.M. (RIA) 87218; April 29, 1987. William J. Hagan, for the petitioners. John A. Guarnieri and Dermot Kennedy, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6651(a)(1)
1978
$50,827.13
$2,578.96
$4,987.91
1979
157,098.00
7,854.00
*221 After concessions, the issues for decision are (1) whether petitioners had unreported income in the amounts determined by respondent; (2) whether petitioners are liable for the addition to tax under section 6653(a) for negligence or the intentional disregard of rules and regulations; [2] and (3) whether petitioner Soon Ja Hyon qualifies as an innocent spouse under section 6013(e). FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners, Yong Gil Hyon and Soon Ja Hyon, were husband and wife during the years at issue and resided in Philadelphia. They resided in Havertown, Pennsylvania at the time they filed their petition. In 1975 petitioners, who are both natives of Korea, moved to the United States. They first lived *222 in Ohio and then moved to Philadelphia, where Mr. Hyon took a job with a meat packing company. A short time later, he left the packing company and became one of Philadelphia's many street vendors. He first sold fruit, but by January 1976 he was selling only umbrellas and handbags, which he obtained during weekly trips to New York City. In February 1977, Mr. Hyon opened a store under the name of "Hyon's Wigs" in Upper Darby, which is near Philadelphia (the "wig store"). His wife began to sell wigs at retail from the front of this store, and he continued to sell umbrellas and handbags at wholesale from the back of the store. In 1978, he moved the umbrella and handbag wholesale business to a building in Philadelphia, which he thereafter called "Han Mi Views and Company" (the "umbrella store"). Both stores were operated by petitioners during 1978 and 1979. Petitioners filed joint income returns for 1978 and 1979. On the 1978 return, they reported an adjusted gross income of $9,827.00, including a net profit of $3,047.71 from the umbrella store and $6,236.37 from the wig store. According to the 1978 return, the umbrella store had gross receipts of $361,271.10 and cost of goods *223 sold of $316,843.39, and the wig store had gross receipts of $69,211.42 and cost of goods sold of $38,504.05. On the 1979 return, petitioners reported an adjusted gross income of $18,548.00 including a net profit of $10,946.00 from the umbrella store and $7,636.00 from the wig store. According to the 1979 return, the umbrella store had gross receipts of $401,066.00 and cost of goods sold of $355,023.00, and the wig store had gross receipts of $65,481.00 and cost of goods sold of $37,982.00. Petitioners' 1978 return was audited by Elizabeth Hall, an agent for respondent. She began her examination by requesting that petitioners produce the books and records of the two stores. Upon being informed that no permanent books or records had been maintained for the businesses and that the 1978 return had been prepared from notations made by petitioners on a few pieces of paper which were no longer available, the agent reconstructed petitioners' income from the increase in their bank accounts as reflected on bank statements and identified or admitted expenditures for nondeductible items including personal living expenses as estimated by petitioners. In this manner respondent determined *224 that petitioners had unreported taxable income for 1978 in the amount of $102,342.85. Respondent's computation is as follows: Funds accumulated, spent or applied to nondeductible items: 1) Cash in banks -- increase (1/1/78 to 12/31/78)
$ 2,021.39
2) Cash on hand -- increase (1/1/78 to 12/31/78)
3,212.67
3) Inventories -- increase (1/1/78 to 12/31/78)
89,000.00
4) Assets purchased in 1978
18,617.00
5) Living expenses of 1978
11,355.00
6) Estimated Tax Payment in 1978
722.00
$124,828.06
Less nontaxable sources of funds: 1) Depreciation reserve
$ 7,380.00
2) Tax refund
878.00
3) Loan
1,400.00
$ 9,658.00
Corrected adjusted gross income
$115,170.06
Less adjusted gross income per return
9,827.21
Less personal exemptions
3,000.00
Unreported taxable income
$102,342.85
Petitioners' 1979 return was audited by Edward Ramer, another agent for respondent. When petitioners failed to appear at a conference arranged by Ramer, he proceeded to reconstruct their gross business receipts from their reported cost of goods sold by using an average gross profit percentage [3] of 47 percent, the average percentage in 1979 for retail businesses *225 with annual sales of between one and two million dollars. [4] The gross receipts determined in this manner were then increased by Ramer by three percent because he concluded that petitioners would have less overhead than an established store with such sales. However, in making his computations, Ramer mistakenly used the profit percentage for retail businesses for both of petitioners' stores even though the umbrella store was clearly identified as a wholesale business on both the 1978 and 1979 returns. With the above computations respondent's agent determined that petitioners had unreported income in 1979 of $319,463.00. During 1978 and 1979, Mrs. Hyon was generally familiar with the operation of both stores, and she and her husband lived on the income generated by them. She was also generally aware of the profits being made from the stores. OPINION Computation of Unreported Income
Since petitioners failed to maintain or produce any books *226 or records, respondent was authorized by section 446 to compute their income by any method which in his opinion clearly reflected such income. ; . Furthermore in such a case respondent has great latitude in adopting a method for reconstructing the income, , and his method of reconstruction need only be reasonable in the light of all surrounding circumstances., . However, respondent's determination can be adjusted if warranted by the circumstances or if the method is found to be inadequate in some respect. . Petitioners have the burden of proving that the method used and the determination made by respondent in this case is erroneous. ; Rule 142(a). With respect to 1978, respondent used the cash expenditures method, to determine petitioners' income. This method is well recognized as a permissible method of reconstructing *227 income in cases of this nature. See, e.g., , affd. in part, revd. in part . Furthermore, we are satisfied that respondent properly used the method, and in the absence of any proof by petitioners which tends to cast doubt upon his calculations, we conclude that respondent's determination with respect to 1978 is correct and should be sustained. However, with respect to 1979, we have found that respondent's agent mistakenly used a retail profit percentage to compute the gross receipts of petitioners' wholesale umbrella store. Nevertheless, from the entire record before us, we are satisfied that petitioners had unreported income in 1979 from their umbrella business for the following reasons. First, as we have previously found, petitioners had unreported income of $102,342.85 in 1978, which apparently occurred with respect to the receipts from the umbrella business because the reported receipts from the wig business in 1978 were substantially in line with gross profit percentage used by respondent. In fact, percentage-wise, the reported receipts from the wig business for both *228 1978 and 1979 appear to be substantially in line with respondent's determination (a gross profit percentage of 40 to 45 percent by petitioners as compared to respondent's 50 percent). By adding the unreported income which we have found for 1978 to the gross receipts reported in 1978 by petitioners for the umbrella store ($102,342.85 plus $361,271.10) it appears the corrected gross receipts for that year would be $463,613.95. By using the corrected gross receipts of $463,613.95, for 1978 as thus determined and cost of goods sold of $316,843.39 as reported by petitioners for 1978, the gross profit percentage of the umbrella store for 1978 is about 32 percent ($463,613.95 minus $316,843.39 divided by $463,613.95). If the same percentage is applied to 1979, and on the record before us we can see no logical reason not to do so, it appears that the umbrella store had gross receipts in 1979 of $522,093. [5] Since petitioners reported gross receipts of $401,066, their unreported income for 1979 was $121,027 instead of the $319,463 determined by respondent, and respondent's calculations should be adjusted accordingly. *229 Addition to Tax for Negligence
Petitioners have the burden of proof on this issue. ; Rule 142(a). However, they presented no proof which tended to show that their underpayments are not due to negligence or the intentional disregard of rules or regulations. It is assumed, therefore, that they have abandoned the issue, and consequently the assertion of the addition to tax is sustained with respect to both 1978 and 1979. Relief as Innocent Spouse
To qualify for relief as an innocent spouse under section 6013(e) Mrs. Hyon has the burden of proving that (1) a joint return for each of the years 1978 and 1979 was made on which there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Hyon; (2) in signing the returns, she did not know and had no reason to know of such substantial understatements; and (3) taking into account all facts and circumstances, it is inequitable to hold her liable for the tax attributable to the substantial understatements. While we have found that a substantial omission of income in each year occurred with respect to the umbrella store for which Mr. Hyon *230 was primarily responsible, we have also found that Mrs. Hyon was generally familiar with the operation and the profits of both stores and consequently could have determined that receipts from the umbrella store were omitted from the returns. See . Furthermore, we have found that both she and her husband used the receipts of both stores for personal living expenses. Therefore, we are unable to conclude that she did not know, or had no reason to know, of the substantial understatement or that she is entitled to the relief provided by section 6013(e) on the ground that it would be inequitable to hold her liable for the deficiencies. . Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. The addition to tax under section 6651(a)(1) was conceded by respondent.↩
3. For our purposes, "gross profit percentage" is gross receipts minus cost of goods sold, divided by gross receipts. ↩
4. The source of the percentage used by Ramer was an annual publication by National Cash Register Corporation.↩
5. The gross receipts for 1979 are computed by assuming that if X equals gross receipts; and cost of goods sold equals 355,023; and the gross profit equals 32 percent of X, then: X -.32X = 355,023; .68X = 355,023; and X = 522,093↩